# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

IFRAH YASSIN,

    Plaintiff,

v.

HEATHER WEYKER, *individually and in her official capacity as a St. Paul Police Officer*; JOHN DOES 1-2, *individually and in their official capacities as St. Paul Police Officers*; JOHN DOES 3-4, *individually and in their official capacities as supervisory members of the St. Paul Police Department*; and THE CITY OF ST. PAUL,

    Defendants.

Case No. 16cv2580 (JNE/TNL)
ORDER

## I.    INTRODUCTION

Plaintiff Ifrah Yassin alleges that she was arrested without probable cause on the basis of fabricated evidence and material omissions, in violation of her constitutional rights. She was indicted by a federal grand jury on charges of obstructing justice by attempting to intimidate a witness in a different federal case, and a jury acquitted her of all charges after a trial. Yassin sues Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota; John Does 3-4, members of the St. Paul Police Department who are alleged to have been Weyker's supervisors; and the City of St. Paul ("St. Paul").[1] Weyker moves to dismiss Yassin's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified immunity grounds. Dkt. No. 22. St. Paul moves on behalf of the City of St. Paul and John Does 3-4 for judgment on the pleadings. Dkt. No. 28.

---

[1] Yassin's complaint also names John Does 1-2 in Count 2, but that count was dismissed without prejudice by stipulation. *See* Dkt. No. 42.

The witness whom Yassin was charged with intimidating was a witness in a large criminal case prosecuted in the Middle District of Tennessee that at its core alleged a widespread conspiracy to sex-traffic minor girls across Minnesota, Tennessee, and Ohio ("Tennessee Case"). Thirty people, mostly Somali, were indicted in the Tennessee Case in 2010-2011. Twenty of the former defendants in that criminal case have brought separate civil suits alleging that Weyker, an investigator in the Tennessee Case, fabricated evidence, causing them to be arrested and detained unlawfully. The parties in these twenty-one separate civil cases agreed to coordinated briefing on the defendants' motions to dismiss and for judgment on the pleadings. The Court assumes familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No. 16cv908 ("Osman Opinion") (filed simultaneously herewith).

The Court held a hearing on Defendants' motions on May 3, 2017, and now grants in part and denies in part Weyker's motion and grants St. Paul's motion.

## II. APPLICABLE STANDARDS

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a [m]atter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted). To survive a Rule 12 motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016). *See also* Osman Op. 3-4.

## III. SUMMARY OF YASSIN'S ALLEGATIONS

On June 16, 2011, Yassin and two friends, Hawo Ahmed and Hamdi Mohamud, were driving to the mall when Ahmed spotted Muna Abdulkadir. Compl. ¶¶ 8-9. Ahmed told her

friends that she wanted to fight Abdulkadir, without explaining why, and exited the car to approach Abdulkadir. Compl. ¶ 9. Yassin followed. *Id.* The two followed Abdulkadir into an apartment building, where Ahmed confronted her, and Abdulkadir agreed to fight. Compl. ¶ 10. The three stepped into an elevator and got into a physical altercation. Compl. ¶¶ 10-11. Yassin did not participate until she felt the need to protect Ahmed, who was pregnant. *See* Compl. ¶ 11. The three parted ways, and Abdulkadir proceeded to go to Ahmed's car, with a knife in hand, and begin breaking the windows. Compl. ¶¶ 12-13. When Yassin approached, Abdulkadir lunged at her with the knife. Compl. ¶ 14.

Yassin broke away and called the police for emergency help. Compl. ¶ 15. Minneapolis Police Department Officer Anthijuan Beeks responded to Yassin's emergency call, and when he arrived at the scene, he spoke to Yassin and her friends, treating them as victims of alleged felony assault and vandalism. Compl. ¶ 17. Before he could find and question Abdulkadir, he received an urgent call from Weyker. *Id.*

After observing that Yassin had called the police, Abdulkadir ran and called Weyker. Compl. ¶ 16. Weyker then got in touch with Beeks. She informed him that she was a St. Paul police officer, that "Abdulkadir was a key witness in a federal human-trafficking investigation that Weyker was working on," and that Weyker "had 'information and documentation' that Yassin, Ahmed, and Mohamud had been actively seeking out Abdulkadir to intimidate her and cause bodily harm to her because of her role in the federal investigation." Compl. ¶ 18.

Without confirming that the "information and documentation" existed, Beeks took Weyker at her word: "her conversation with him 'changed the situation.'" Compl. ¶ 19. "Based on Weyker's representations, Officer Beeks and his supervisor decided to arrest Yassin, Ahmed, and Mohamud on suspicion of federal witness tampering. The[y] also decided not to arrest

3

Abdulkadir on state felony assault or vandalism charges." Compl. ¶ 20. "Beeks told Yassin in his squad car while driving her to jail that he arrested her based on Officer Weyker's assertions." Compl. ¶ 25.

In fact, Weyker did not have any "information and documentation" about Yassin or her friends, about whom Weyker had only first learned that very day. Compl. ¶ 21. Yassin had been out of the country from 2008 to 2011, Compl. ¶ 22, while the Tennessee Case investigation was ongoing and the indictments were filed. Weyker's statement to Beeks that she had "information and documentation" that Yassin had been trying to intimidate and harm Abdulkadir for her role as a witness was entirely false, and furthermore omitted that Abdulkadir had "previously made multiple false statements to her." Compl. ¶¶ 21, 23. Weyker made these false and misleading statements because "Abdulkadir was a lynchpin of Weyker's manufactured human-trafficking case," the Tennessee Case, in which none of the defendants who stood trial were convicted. Compl. ¶ 24 & n.2 (citing *United States v. Fahra*, 643 Fed. Appx. 480 (6th Cir. 2016)). Weyker "sought to assist Abdulkadir in avoiding criminal charges for her actions against Yassin, Ahmed, and Mohamud as further incentive for Abdulkadir to continue cooperating with Weyker by fabricating events and testimony in the human-trafficking case." Compl. ¶ 24.

After Beeks arrested Yassin, she was temporarily held in custody before being released on conditions. Compl. ¶ 32. She was indicted on federal charges of witness tampering and obstruction of justice. Compl. ¶ 25. A jury acquitted her of all charges in July 2013. *Id.* ¶ 34.

Yassin alleges violations of her rights under the Fourth, Fifth, Sixth, and/or Fourteenth Amendments. She also includes allegations relating to supervisory and municipality liability.

### IV.    SUMMARY OF ARGUMENTS

The parties briefed many issues. They dispute whether Yassin's claims should be

brought under 42 U.S.C. § 1983 or if Weyker was acting in a federal capacity at the time of the alleged violations of Yassin's rights. To the extent Yassin seeks to bring a claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Weyker argues that remedies under *Bivens* are not available in a case like Yassin's. Yassin contends that she may pursue her Fourth Amendment and due process claims pursuant to *Bivens*. Weyker, in her consolidated briefing, asserts absolute immunity to the extent Yassin's allegations rest on Weyker's grand jury testimony, and Yassin counters that absolute immunity does not shield Weyker from liability for her pre-testimonial misdeeds. The parties debate whether Yassin's due process claims are barred by *Parratt v. Taylor*, 451 U.S. 527 (1981), and its progeny. Weyker argues that Yassin's due process claims also fail because they sound, if at all, only in the Fourth Amendment, that the due process claims also fail to the extent they are based on alleged *Brady*[2] violations because Yassin was not convicted, and that there was at least arguable probable cause to arrest and detain Yassin. Yassin argues that qualified immunity does not shield Weyker as to the substantive due process claims because it was clearly established at the time that it is illegal for a police officer to fabricate evidence, *Brady* violations have also been long established, and it is well established that the Fourth Amendment requires a truthful factual showing of probable cause. As for St. Paul's motion, the parties dispute whether Yassin's allegations adequately plead supervisory and municipal liability in light of Defendants' assertions of qualified immunity.

V. **LEGAL ANALYSIS**

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911 (Mar. 21, 2017), Yassin's claims sound, if at all, in the Fourth Amendment, not the Fifth or

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

5

Fourteenth.³ *See* Osman Op. 11-13; *see also id.* at 17-22. Her complaint is that "[b]ut for the testimony manufactured by Weyker, no probable cause existed to detain or otherwise restrict Yassin's liberty." Compl. ¶ 1. In other words, she complains "that a form of legal process resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed lies in the Fourth Amendment." *Id.* A "constitutional division of labor" applies to claims similar to Yassin's. *Id.* at 920 n.8. Thus, because she challenges her pretrial detention, her claim is under the Fourth Amendment. In contrast, if she had been convicted and were to challenge the sufficiency of the evidence supporting that conviction, her claim would then be analyzed under the Due Process Clause of the Fourteenth Amendment because "once a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support *both a conviction and any ensuing incarceration* does so under the Due Process Clause . . . ." *Id.* (emphasis added) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979), and *Thompson v. Louisville*, 362 U.S. 199, 204 (1960)). Although Yassin did stand trial, she was acquitted and thus was never punished pursuant to a conviction. So her claims still are under the Fourth Amendment. *Compare with Jackson*, 443 U.S. at 316 (describing the due process guarantee "that no person shall be made to *suffer the onus of a criminal conviction* except upon sufficient proof") (emphasis added), *and Thompson*, 362 U.S. at 206 (holding that it violates due process "to convict and punish a man without evidence of his guilt"). Yassin's claims for substantive due process violations under the Fifth or Fourteenth

---

³ Yassin and St. Paul filed a stipulation agreeing to the dismissal of her Sixth Amendment claims in Counts 1 and 4, Dkt. No. 43, which appears to have mooted the parties' arguments as to whether Yassin may pursue a Sixth Amendment claim. However, because the stipulation describes the agreement as "dismiss[ing] without prejudice against the St. Paul City Defendants," *id.*, not Weyker specifically, and Weyker's counsel did not sign the stipulation, it is not entirely clear that the issue is moot. To the extent that the stipulation did not moot the issue, the Court finds that Yassin abandoned any argument that she may pursue a Sixth Amendment claim by failing to respond to Weyker's arguments for the dismissal of those claims.

6

Amendments therefore fail.[4] *See Manuel*, 137 S. Ct. at 919-20; *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion).

Under the Fourth Amendment analysis, the Court must decide whether Yassin plausibly alleges that the Defendants violated her right to be free from unreasonable seizure by arresting and detaining her without arguable probable cause, based on fabricated evidence.[5]

"It is clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013) (citation omitted). "[O]fficers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." *Id.* (citations omitted). "Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense." *Id.* (citations omitted). "[I]t is clearly established that the Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause." *Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir. 1999).

For an arrest pursuant to a warrant, when a plaintiff alleges that some statements in support of the warrant were untruthful, the court would set aside the untruthful statements and review the remainder to determine whether probable cause still existed for the arrest. *See*

---

[4] Moreover, to the extent Yassin's due process claims are based on alleged *Brady* violations, "[a]ssuming [Weyker] failed to disclose exculpatory evidence, there was no *Brady* violation because [Yassin was] not convicted." *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012).

[5] Because the Court finds that only the Fourth Amendment, and not substantive due process, is applicable; because a Fourth Amendment claim in this case does not present a new context for a *Bivens* action; and because § 1983 and *Bivens* claims are analyzed similarly, the Court does not reach the question of whether Yassin's claim should be brought under § 1983 or *Bivens*. *See* Osman Op. 13-17.

*Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir. 2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013).

### a. Analysis of Yassin's Claim Under the Fourth Amendment

In considering whether Yassin plausibly alleges a Fourth Amendment violation, the Court disregards mere conclusory statements, focuses on well-pleaded factual allegations, and applies its judicial experience and common sense. *See Iqbal*, 556 U.S. at 678-79. In ruling on a Rule 12(b)(6) or 12(c) motion, a court accepts the facts alleged in the complaint as true and grants all reasonable inferences in favor of the plaintiff. *Haney*, 837 F.3d at 924. The Court also may consider the court record of Yassin's criminal case in assessing the pleadings. *See, e.g.*, *Greenman*, 787 F.3d at 887.

Weyker argues that she did not cause Yassin's arrest. *See* Weyker Br. 86-88, Dkt. No. 24; Weyker Reply 24-26, Dkt. No. 38. But Yassin specifically alleges that Weyker caused her arrest by her statements to Beeks, and that Beeks acknowledged as much to Yassin in the squad car. "Officers remain liable . . . for the reasonably foreseeable acts of actors they deceive." *Small*, 708 F.3d at 1006.

Weyker also contends there was at least arguable probable cause for the arrest. *See* Weyker Br. 86-88; Weyker Reply 24-26. The Court views Yassin's allegations regarding the warrantless arrest in the light most favorable to her. The basic facts alleged are relatively straightforward. Yassin alleges that Weyker was the proximate cause of her arrest because she made a false statement to Beeks, which was the basis for Beeks' arrest of Yassin. She alleges specifically that Beeks told her, while driving her to the police station, that he "arrested her based on Officer Weyker's assertions." Compl. ¶ 25. She alleges that there is no way Weyker could have had "information and documentation" on Yassin because Weyker had never heard of

8

Yassin, who had been out of the country for several years during the investigation of and indictments in the Tennessee Case. Yassin further alleges that she had never heard of the Tennessee Case and never had any contact with Abdulkadir about her role in that case, again undercutting a possibility that Yassin was seeking to intimidate Abdulkadir because of her role as a witness, as well as undercutting the possibility that Weyker could have had "documentation" to that effect. She also pleads a reason why Weyker may have made the false statement, alleging that Weyker "sought to assist Abdulkadir in avoiding criminal charges for her actions against Yassin, Ahmed, and Mohamud as further incentive for Abdulkadir to continue cooperating with Weyker by fabricating events and testimony in the human-trafficking case." Compl. ¶ 24. Yassin supports her allegations about Weyker's supposed role in fabricating evidence in the Tennessee Case by citing to *United States v. Fahra*, 643 Fed. Appx. 480 (6th Cir. 2016), an opinion that the Court discusses in the Osman Opinion, concluding that it lends some plausibility to Osman's allegations. Compl. ¶ 24 n.2; *see, e.g.*, Osman Op. 27-28, 35. She also alleges that she and her co-defendants were acquitted of all charges. The Court finds that these allegations, viewed as a whole, meet the *Iqbal* standard and that Weyker is not entitled to qualified immunity based on these allegations that her misrepresentations directly caused Yassin's arrest.

Weyker's arguments for finding that there was arguable probable cause to arrest Yassin are unavailing at the Rule 12 stage. First, Weyker argues that Yassin's own admissions that she and her friend initiated a fight with Abdulkadir and that Abdulkadir was a witness in the Tennessee Case establish at least arguable probable cause even without any allegedly false statements by Weyker. But Yassin's complaint does not allege that Beeks knew, at the time of the arrest, that Yassin's friend had initiated the fight. Rather, it alleges that before Beeks spoke with Weyker, he was operating on the understanding that Abdulkadir was the perpetrator and

9

Yassin and her friends were the victims. Second, Weyker asks the Court to take judicial notice of several court documents, including a criminal complaint that was filed against Yassin the day after her arrest, attached to which is a lengthy affidavit by Weyker. *See* DOJ Br. 88 n.42 (citing *United States v. Yassin*, No. 3:11cr132, No. 1 (M.D. Tenn. June 17, 2011), submitted in this civil case as Weyker Br. Ex. Q, Dkt. No. 25-1); DOJ Reply 25. Not only does this after-the-fact affidavit not establish what Beeks knew when he arrested Yassin, or on what grounds he arrested her, but it is also fair to read Yassin's complaint as questioning the veracity of Weyker's narrative in the affidavit. The other documents that Weyker filed in support of her motion—the indictment against Yassin, minutes for her first appearance, a motion in limine filed by her counsel in the criminal proceeding, and the exhibit and witness list from her trial; *see* DOJ Br. 9-10—also do not establish Weyker's entitlement to qualified immunity at the pleadings stage.

### b. Supervisory Liability

Yassin also sues John Does 3-4 in their individual capacities as supervisors. She alleges that they were deliberately indifferent to Weyker's violations of her rights. *See* Compl. ¶¶ 29-30.

A supervisor sued in his or her individual capacity in a § 1983 or *Bivens* suit "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers*, 700 F.3d at 355). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right.

10

Allegations of generalized notice are insufficient." *Id.* The notice prong requires that "[t]o impose supervisory liability, other misconduct [allegedly giving the supervisor notice] must be very similar to the conduct giving rise to liability." *Id.* (quoting *Livers*, 700 F.3d at 356).

Yassin's complaint contains essentially no well-pleaded facts, only conclusory allegations, regarding supervisory liability. She alleges that the supervisory defendants "were aware of Weyker's fabrication of evidence and multiple courts' recognition of this fact," Compl. ¶ 29, and that "[b]y no later than February 15, 2012, they had actual knowledge that Weyker fabricated evidence on multiple occasions with respect to her human trafficking case," Compl. ¶ 30. Even assuming these allegations are oblique references to the same court documents that Osman cited more particularly, the Court would find that these allegations do not sufficiently plead supervisory liability based on notice, nor establish a pattern of unconstitutional acts by Weyker, for the same reasons given in the Osman Opinion. *See* Osman Op. 37-41.

The allegations fail to state a claim for supervisory liability, and John Does 3-4 are entitled to qualified immunity as to these counts.

### c. Municipal Liability

Yassin sues St. Paul as well as Weyker and John Does 3-4 in their official capacities for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id*. "A plaintiff who sues public employees in their official . . . capacities sues only the public employer and therefore must establish the municipality's liability for the alleged conduct."

11

*Miller v. City of St. Paul*, 823 F.3d 503, 506 (8th Cir. 2016) (quoting *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016)).

A plaintiff therefore must show that there is an "official" policy or a "custom or usage with the force of law." *Kelly*, 813 F.3d at 1075. A plaintiff must plead "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation omitted). "Misconduct among a municipality's employees must be 'continuing, widespread, [and] persistent' to establish such a custom." *Kelly*, 813 F.3d at 1075 (citation omitted). Also, "the municipality will not be liable unless policymaking officials exhibit '[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct.'" *Id.* at 1075-76 (citation omitted). The question is whether a "governmental policy or custom was the 'moving force' that led to the deprivation of [the plaintiff's] constitutional rights." *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002). Even if no individual employee is found liable, a municipality might be liable, but only where "the combined actions of multiple officials or employees may give rise to a constitutional violation." *Id.*

Yassin does not adequately support her conclusory municipal liability allegations. She does not allege with well-pleaded facts that Weyker or other St. Paul Police Department employees fabricated evidence in other investigations, nor that policymaking officials in the department were aware of any previous incidents of fabrication of evidence. She does not allege well-pleaded facts to support a theory that multiple St. Paul Police Department members combined to violate his rights. Nor does she allege facts that would demonstrate an official department *policy* that moved officers to fabricate evidence and mislead prosecutors and grand

juries to secure indictments. She also does not plausibly allege any such *custom* because, among other reasons, she has not adequately alleged notice, as explained above. The defendants sued in their official capacities, and the City of St. Paul, are entitled to qualified immunity.

## VI. Conclusion

Defendants are entitled to qualified immunity on all counts except Counts 1 and 4, which survive in part. As to Defendants John Does 3-4 and the City of St. Paul, the Court grants their motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010). The Court will not grant leave to amend based on a request made in passing at the end of a brief without complying with local rules or in any way indicating what changes might be made. *See In re Baycol Prod. Litig.*, 732 F.3d 869, 880 n.8 (8th Cir. 2013).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Heather Weyker's Motion to Dismiss [Dkt. No. 22] is GRANTED IN PART and DENIED IN PART consistent with the above opinion.

2. Defendant City of Saint Paul's Motion for Judgment on the Pleadings [Dkt. No. 28] is GRANTED.

3. Plaintiff Ifrah Yassin's Complaint is DISMISSED WITH PREJUDICE as to Defendants John Does 3-4 and the City of St. Paul.

4. Counts 1 and 4 of Plaintiff Ifrah Yassin's Complaint are DISMISSED WITH PREJUDICE to the extent they plead violations of the Fifth, Sixth, and Fourteenth Amendments.

Dated: August 9, 2017              s/ Joan N. Ericksen
                                                                      JOAN N. ERICKSEN
                                                                      United States District Judge